# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IAN WRIGHT,<br>    *Plaintiff*, | )<br>)<br>) | 3:20-CV-1284 (SVN) |
| v. | )<br>) | |
| COOKE, *et al.*,<br>    *Defendants*. | )<br>)<br>)<br>) | September 11, 2023 |

## RULING AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this civil rights action, Plaintiff Ian Wright, a sentenced inmate[1] in the custody of Connecticut Department of Correction ("DOC"), alleges that Defendants Warden Robert Martin, Deputy Warden Carlos Nunez, Correctional Lieutenant Jonathan Peau, Correctional District Administrator Sharonda Carlos, Dr. Ingrid Feder, and Correctional Health Service Review Coordinator Janine Brennan violated his Eighth Amendment rights when they failed to provide him with the proper medical treatment for his back and abdominal pain.

Defendants have moved for summary judgment, arguing, in part, that Plaintiff failed to exhaust his administrative remedies. Plaintiff opposes Defendants' motion, arguing that he should be excused from exhausting his claims. Because Plaintiff's claims relating to his medical treatment are not exhausted and he is not excused from exhausting them, and because Plaintiff's exhausted claim lacks merit, Defendants' motion for summary judgment is GRANTED.

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). On March 22, 2002, Wright was sentenced to thirty-five years of incarceration and is now housed at Brooklyn Correctional Institute ("Brooklyn C.I."). *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=286236 (last visited September 11, 2023).

## I.   PROCEDURAL HISTORY

Plaintiff initiated this action in September of 2020, ECF No. 1, and filed an amended complaint on December 23, 2020.   Am. Compl., ECF No. 21.   In his Amended Complaint, Plaintiff alleged various violations of his state and federal constitutional rights in connection with injuries related to his medical care and conditions of confinement.   *See id.*   Specifically, Plaintiff alleged a broad array of injuries including deliberate indifference to his back and abdominal pain, failure to provide nutritional and safe meals, failure to follow COVID-19 protocols, failure to provide adequate outdoor recreation time, and failure to provide safe living quarters.   *Id.*   On initial review, the Court permitted Plaintiff to pursue his claim of deliberate indifference against Defendants Martin, Nunez, Carlos, Peau, Brennan, and Feder, but dismissed the other claims. Initial Review Order ("IRO"), ECF No. 31.

Following a period of discovery, Defendants moved for summary judgment, arguing: (1) Plaintiff failed to exhaust his available administrative remedies in compliance with the Prison Litigation Reform Act ("PLRA"); (2) Plaintiff cannot prevail on the merits of his Eighth Amendment claims; and (3) Plaintiff cannot demonstrate the personal involvement of Defendants Carlos, Martin, Nunez, and Peau.   Mot. for Summ. Judg., ECF No. 61.   Plaintiff opposes Defendants' motion.

## II.   FACTUAL BACKGROUND[2]

The following factual background reflects the Court's review of the Amended Complaint, ECF No. 21; Defendants' Local Rule ("L.R.") 56(a)1 Statement ("Defs.' L.R. 56(a)1 St."), ECF

---

[2] Generally, the Court cites only to the relevant paragraph in Defendants' Local Rule 56(a)1 Statement where a fact is not disputed.

No. 61-2; Plaintiff's L.R. 56(a)2 Statement ("Pl.'s L.R. 56(a)2 St."), ECF No. 66; and all supporting materials.[3]

Since at least the spring of 2018, Plaintiff has reported a history of back pain, which the DOC treated with Motrin.  *Id.* ¶ 11.  Plaintiff states that while he experienced "back pains on/or around 2018, he was pre[s]cribed ibuprofen . . . which did not abate his back pain . . . ."  Pl.'s St. ¶ 11.

On January 24, 2020, Plaintiff submitted an inmate request form complaining of pain on the left side of his body and numbness in his legs.  Defs.' L.R. 56(a)1 St. ¶ 12.  On February 8, 2020, Plaintiff complained to a nurse during sick call of tingling, burning, and pain down his legs. *Id.* ¶ 13.  The nurse referred Plaintiff to the provider sick call list for a future appointment.  *Id.* ¶¶ 13–14.  On the provider sick call list, an inmate waits on standby to be seen by the next available medical professional, such as a doctor or an advanced practice registered nurse ("APRN").  *Id.* ¶¶ 13–14.

On February 12, 2020, APRN Muzykoski entered a note in Plaintiff's medical record stating that she had reviewed his file and ordered an x-ray of his back.  *Id.* ¶ 15.  The x-ray demonstrated minimal ventral bone spurring in vertebral bodies L4 and L5.  *Id.* ¶ 16.  Muzykoski sent Plaintiff a note on February 18, 2020, informing Plaintiff that his bone spurring was consistent with arthritis and that daily Tylenol was the best course of treatment.  *Id.*

On February 21, 2020, Plaintiff submitted an inmate request complaining about his mattress, though he does not recall this request.  *Id.* ¶ 18; Pl.'s L.R. 56(a)2 St. ¶ 18.  The mattress

---

[3] Plaintiff disputes nearly every fact in Defendants' L.R. 56(a)1 Statement in some manner, and has provided a significant number of additional facts he deems material.  The Court attempts to distill those facts that appear undisputed and or that are disputed and are relevant to this ruling.

was too flat, and so he requested an egg-crate foam mattress, a pass for a double mattress, and/or a bottom bunk pass.   Defs.' L.R. 56(a)1 St. ¶ 18.   On February 22, 2020, a nurse entered notes into Plaintiff's medical records concerning his request for mattress accommodations.   Pl's. L.R. 56(a)2 St. ¶ 19.   Plaintiff's medical records indicate that the nurse explained that Plaintiff could not have a double mattress, but that custody staff could issue a replacement for his current mattress. *Id.*

Dr. Feder saw Plaintiff on February 26, 2020.   *Id.* ¶ 20.   Dr. Feder reviewed Plaintiff's x-ray and prescribed a nonsteroidal anti-inflamatory drug ("NSAID") that was an alternative to Motrin and a topical gel to mitigate his arthritic pain.   *Id.*   At this appointment, Plaintiff also complained about abdominal pain dating back to 2014, and Dr. Feder prescribed a proton pump inhibitor to treat suspected gastric acid secretion.   *Id.*   Dr. Feder instructed Plaintiff to return to the medical unit should his pain persist.   *Id.*   Dr. Feder did not order imaging for his abdomen. *Id.* ¶ 22.

As part of Dr. Feder's review of Plaintiff's symptoms, she also granted him a bottom bunk pass.   *Id.*   While she did not recall discussing special mattress accommodations, she avers she would not have advised him about mattresses because his arthritis was best treated by a daily low-level pain reliever, not a different mattress.   *Id.* ¶ 21; Feder Decl., ECF No. 61-5, ¶ 21.   Plaintiff denies Dr. Feder's recollection, and states that she recommended a double mattress.   Pl's. L.R. 56(a)2 St. ¶ 21.

On May 1, 2020, Plaintiff submitted an inmate request, complaining that his abdominal medication was ineffective.   *Id.* ¶ 24.   A nurse met with Plaintiff on May 17, 2020, and Plaintiff explained that he was suffering from cramping.   *Id.* ¶ 25.   Plaintiff also claimed he was waiting

for an MRI.  *Id.*  APRN Muzykoski followed up with Plaintiff on May 20, 2020, about the alleged MRI order, and told him she did not see such an order in his record.  *Id.* ¶ 27.  She explained that because of COVID-19 protocols, Plaintiff would need to write to medical in one to two months to schedule an MRI.  *Id.*  APRN Muzykoski also inquired with Dr. Feder about the MRI; Dr. Feder informed APRN Muzykoski that an MRI was not necessary based her previous examination of Plaintiff, and that Dr. Feder had not learned any new information that would have changed her assessment of Plaintiff's condition.  *Id.* ¶ 28.

A few weeks later, on June 10, 2020, Plaintiff was scheduled to meet with APRN McPherson about his back pain and numbness.  *Id.* ¶ 29.  Defendants contend that, when Plaintiff was called to attend this appointment, he explained that he was in the gym working out and that he would not attend.  *Id.*  Plaintiff denies this version of events.  Pl.'s L.R. 56(a)2 St., ¶ 29.  APRN McPherson noted in Plaintiff's medical record that he was "obviously without pain," and removed him from the provider sick call list.  Def's. L.R. 56(a)1 St., ¶ 29.  Afterwards, Plaintiff continued to complain of back pain, sought renewals of his pain-relieving medication, and again requested an MRI.  *Id.* ¶¶ 32–33.

On September 19, 2020, Plaintiff met with a nurse about his back pain and MRI request.  *Id.* ¶ 33.  The nurse noted that Plaintiff claimed to have spoken with Dr. Feder, who Plaintiff claims had instructed him to write to medical for an MRI.  *Id.*  Dr. Feder has no recollection of this conversation.  *Id.*  That same day, Plaintiff submitted an inmate request claiming that Dr. Feder had instructed Plaintiff to request a thicker mattress.  *Id.* ¶ 34.  Dr. Feder likewise does not recall this conversation, and attests she would not have made this recommendation.  *Id.*

APRN McPherson met with Plaintiff again on September 23, 2020.  *Id.* ¶ 35.  Based on Plaintiff's description of his symptoms, APRN McPherson discontinued Plaintiff's acetaminophen regime, started Plaintiff on Celebrex (a NSAID), and continued the topical gel.  *Id.*  She explained that the best course of treatment for Plaintiff's arthritis was pain relief medication and stretching, and that Plaintiff would continue to suffer some level of pain for the rest of his life, even with a new mattress.  *Id.*  APRN McPherson also prescribed Plaintiff two laxatives for his abdominal complaints.  *Id.*

On October 22, 2020, the DOC transferred Plaintiff to Cheshire Correctional Institution ("Cheshire CI").  *Id.* ¶ 38.  An x-ray on March 17, 2021, and a CT scan on August 19, 2021, confirmed Plaintiff was not suffering from any serious medical conditions.  *Id.* ¶ 39.  Plaintiff claims that he underwent a CAT scan, not a CT scan, and disputes where he was housed when he received the CT scan.  Pl's. L.R. 56(a)2 St. ¶ 39.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   A disputed fact is material only where the determination of the fact might affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is . . . such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in

dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Moreover, the Court bears in mind that a *pro se* litigant's filings must be liberally construed

to raise the strongest arguments they suggest.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### IV.    EXHAUSTION

Defendants' motion for summary judgment first argues that Plaintiff's claims should be dismissed for failure to exhaust the prison's administrative remedies, as required by the PLRA. For the reasons described below, the Court agrees, as to Plaintiff's claims regarding his medical treatment.   The Court finds, however, that Plaintiff has exhausted administrative remedies as to his Eighth Amendment claim for failing to provide him with a mattress accommodation.

#### A.   The PLRA's Exhaustion Requirement

The PLRA requires incarcerated plaintiffs exhaust all administrative remedies available before filing a claim under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).   The PLRA requires "proper exhaustion," meaning plaintiffs must exhaust all available remedies in "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion of administrative remedies serves "two main purposes."  *Id.* at 89 (addressing exhaustion requirements under the PLRA).   First, exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."  *Id.* (cleaned up).   Second, exhaustion promotes efficiency because "[c]laims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."  *Id.*   Congress requires incarcerated plaintiffs to pursue internal remedies before filing in federal court; if a

plaintiff does not provide notice to correctional officials of a problem, they are not afforded the "opportunity to address complaints internally." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Although a plaintiff "need not specifically articulate his claims in grievances in the exact same manner that he articulates them in federal court, he is required to give notice to the defendants about the factual basis of his claims." *Edwards v. Melendez*, 832 F. App'x 50, 54 (2d Cir. 2020) (summary order); *Demuth v. White*, No. 9:18-CV-915, 2020 WL 1030649, at *4 (N.D.N.Y. Mar. 3, 2020) (explaining that a plaintiff's claim may be "unexhausted" when the plaintiff "fails to fairly raise [their] claims in the grievance").   To properly exhaust a claim, "a prisoner must allege facts sufficient to alert corrections officials 'to the nature of the claim,' and 'provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures.'" *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).   "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

The exhaustion requirement may be excused, however, when the administrative remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642–43 (2016).   An inmate must "exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).   The Supreme Court has set forth three circumstances where administrative procedure is considered unavailable:  (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when a procedure is "so

opaque that it becomes, practically speaking, incapable of use"; or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643−44.

Failure to exhaust is an affirmative defense, and a defendant bears the initial burden of establishing "that a grievance process exists and applies to the underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).   If the defendant meets this burden, "administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Id.*   "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Id.*

### B.  The DOC's Administrative Remedy Procedure

For inmates housed in Connecticut state correctional facilities, the DOC's Administrative Directives provide the specific requirements an inmate must follow prior to filing a lawsuit in federal court.

### 1.  *Health Services Review Procedure*

During the relevant time period, grievances related to health services were subject to the procedures set forth in Administrative Directive ("A.D.") 8.9 (effective July 24, 2012, to Apr. 30,

2021).[4]   A.D. 8.9 "enable[s] an inmate to seek formal review of any health care provision, practice, diagnosis or treatment."   A.D. 8.9, § 1.   The DOC's "[r]eview of health care services" enables it "to identify individual and systemic problems, to resolve health care issues in a timely manner and to facilitate the accomplishment of its mission."   *Id.*   There are two types of health services review under A.D. 8.9:   (1) a review of diagnosis and treatment relating to an individual inmate; and (2) a review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider.   *Id.* § 9.

Under the applicable version of A.D. 8.9, an inmate was required to first attempt to resolve the health complaint informally.   For example, an inmate could have attempted to verbally resolve the issue with an appropriate staff member or supervisor.   *See* A.D. 8.9, § 10.   If attempts to resolve the matter verbally were ineffective, then an inmate could proceed to the next step, which required submission of a CN 9602 Inmate Administrative Remedy form.   *Id.*, §§ 11(A), 12. The procedure then differed slightly depending on whether the inmate was challenging his diagnosis and treatment or a practice, procedure, policy, or improper conduct by a provider.   *See Carter v. Revine*, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *8 (D. Conn. May 15, 2017).   If the

---

[4] Defendants have submitted, as an attachment to their motion, the version of A.D. 8.9 that was in effect at the timeframe relevant to Plaintiff's claims.   *See* to Ex. C to Defs.' Mot., Decl. of Health Services Administrative Remedy Coordinator ("HSARC") Brennan, Attach. 1, ECF No. 61-6 at 10–14.   Defendants argue that Administrative Directive 8.9 applies to all of Plaintiff's claims, while Plaintiff cites to A.D. 9.6, another directive entitled "Inmate Administrative Remedies."   The Court finds that A.D. 8.9 applies to Plaintiff's claims concerning his medical treatment, including his claim that medical personnel should have prescribed a mattress accommodation for his arthritis.   *See Durham v. Hanna*, No. 3:19-CV-190 (KAD), 2020 WL 4586688, at *5–6 (D. Conn. Aug. 2020) (noting that grievances against medical officials for medical treatment are subject to A.D. 8.9, whereas grievances related to issues of confinement are subject to A.D. 9.6); *see also Cunningham v. Lupis*, No. 3:21-CV-273 (SALM), 2022 WL 2981572, at *8 n.9 (D. Conn. July 28, 2022) (same); *Carter v. Revine*, No. 3:14-CV-01553 (VLB), 2017 WL 2111594, at *7–8 (D. Conn. May 15, 2017) (describing A.D. 8.9 and A.D. 9.6 and noting A.D. 8.9 applies to health care issues). In addition, however, Plaintiff has also alleged facts that sound in a conditions of confinement claim pertaining to custody officials' failure to provide him with a double mattress, which are related to, but distinct from, his allegations that medical personnel failed to appropriately treat his arthritis with a better mattress.   As to these facts, A.D. 9.6 provides the relevant framework.

inmate was challenging a medical diagnosis or treatment, the Health Services Review Coordinator must schedule the inmate for an appointment as soon as possible, at no cost to the inmate, to determine what action, if any, should be taken.   A.D. 8.9, § 11(A).   If the physician decided that the existing diagnosis or treatment is appropriate, he or she was required to notify the inmate in writing within 10 business days; if, on the other hand, the physician decided that a different diagnosis or treatment is warranted, he or she could act on that decision or refer the case to a committee for authorization to change treatment.   *Id.* § 11(B).

If the inmate was seeking review of a policy or administrative issue, the inmate was required to check the "All Other Health Care Issues" box on the CN 9602 form and "provide a concise statement of what he/she believes to be wrong and how he/she has been affected." A.D. 8.9, § 12.   The Health Services Review Coordinator was required respond to this "Level 1" administrative remedy within thirty days of receipt.   *Id.* § (12)(A).   The possible dispositions were:   Rejected, Denied, Compromised, Upheld, or Withdrawn.   *Id.*   If the inmate was dissatisfied with the Level 1 response, he could appeal within ten days by completing an Appeal of Health Services Review form; this appeal was to be decided by a contracted health services provider within fifteen days of receipt.   *Id.* §§ 12(B) & (C).   For all issues relating to compliance with existing standards, this level of review was final, and the inmate would have exhausted the health services review process.   *Id.* § 12(C).   If, on the other hand, the matter related to a health services policy of the DOC, the inmate could file another appeal with the DOC Director of Health Services, within ten days of receipt of the response at the previous level.   *Id.* § 12(D).   The DOC Director of Health Services was required to notify the inmate of a decision within 30 days.   *Id.* § 12(E).   For "administrative issues," this last appeal to the DOC Director of

Health Services was considered the final level of review, at which point the inmate would have exhausted administrative remedies.   *Id.*

### 2.   *Custody Grievance Procedures*

Claims related to conditions of confinement and deliberate indifference to health by correctional staff are subject to the inmate grievance procedure set forth in A.D. § 9.6(6) (revised Aug. 15, 2013).[5]   *See Cosme v. Faucher*, No. 3:21-CV-1341 (SVN), 2022 WL 16540861, at *3 (D. Conn. Oct. 28, 2022).

Under the procedures in place during the timeframe relevant to Plaintiff's claim, an inmate should have first attempted to resolve the health matter informally.   For example, an inmate could have attempted to verbally resolve the issue with an appropriate staff member or supervisor.   *See* A.D. § 9.6(6)(A), ECF No. 68 at 426.   If attempts to resolve the matter verbally were ineffective, then the inmate would have to make a written complaint by completing a form CN 9601 (Inmate Request Form).   *Id.*   The written form needed to "clearly state the problem and the action requested to remedy the issue."   *Id.*   Pursuant to the Directive, the correctional staff were required respond to the written form within fifteen business days of receipt.   *Id.*

If an inmate was not satisfied with the informal resolution offered, then he could file a Level 1 grievance on a CN 9602 Inmate Administrative Remedy form.   *See id.* § 9.6(6)(C).   The Level 1 grievance needed to be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance, and inmates were directed to include with the grievance a

---

[5] Plaintiff has submitted, as an attachment to his declaration, the version of A.D. 9.6 that was in effect at the time frame relevant to his claims.   *See* ECF No. 68 at 422–35.   Plaintiff has also submitted a number of other documents, including additional grievances he claims to have filed.   Defendants dispute the admissibility of the records appended to Plaintiff's declaration on the grounds that they are hearsay.   However, to the extent the Court relies on the additional grievance records, it is not for the truth of the matters asserted therein; rather, they are relevant for the fact that they were (or were not) filed.   Thus, the documents are not inadmissible hearsay.   *See* Fed. R. Evid. 802(c).

copy of the response to the inmate's written request to resolve the matter informally or an explanation for why the response was not attached. *See id.* The Unit Administrator would respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* § 9.6(6)(I). The grievance would then be returned without disposition, rejected, denied, compromised, upheld, or withdrawn. *See id.* §§ 9.6(6)(D) & (E).

The procedures also provided that the inmate could appeal the Unit Administrator's disposition of the Level 1 grievance, or the Unit Administrator's failure to dispose of the grievance in a timely manner, through a Level 2 grievance. *See id.* §§ 9.6(6)(G), (I), (K). An inmate seeking to appeal a Level 1 grievance would then file a Level 2 appeal within five calendar days of the inmate's receipt of the decision on the Level 1 grievance. *See id.* § 9.6(K). An inmate seeking to appeal the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must have done so within sixty-five days of inmate's filing of the Level 1 grievance. *See id.* § 9.6(M). Level 2 appeals were reviewed by the appropriate District Administrator. *See id.* § 9.6(6)(K). The District Administrator was required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals were restricted to challenges to department policy, challenges to the integrity of the grievance procedure, and Level 2 appeals to which there had been no timely response by the District Administrator. *See id.* § 9.6(6)(L). A Level 3 appeal was to be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner needed to be filed within thirty-five calendar days of the filing of the Level 2

appeal.  *See id.* § 9.6(6)(M).   Level 3 appeals were reviewed by the Commissioner of the Department of Correction or his or her designee.  *See id.* § 9.6(6)(L).

C.  Plaintiff's Health Services Reviews

According to the DOC's records, in 2020, Plaintiff filed eight Level 1 health services administrative reviews ("HSRs") and no appeals.  Def's. L.R. 56(a)1 St. ¶ 44.  For ease of reference, those administrative reviews are listed in a table below.

| HEALTH SERVICES REVIEWS | | | | | |
|---|---|---|---|---|---|
| Number | Date on Form | Date Received | Subject | Disposition | Appealed |
| 25420 | 2/4/2020 | 3/2/2020 | Hepatitis test; pain in abdomen; pain and numbness in legs | Returned without disposition; included too many issues | No |
| 26729 | 4/17/2020 | 4/28/2020 | Back pain; request for double mattress | Rejected; medical does not issue double mattresses and insufficient evidence that informal resolution was attempted | No |
| 26730 | 4/15/2020 | 4/28/2020 | Hepatitis test | Denied; inmate received test | No |
| 26731 | 4/15/2020 | 4/28/2020 | Request for MRI due to abdominal pain | Denied; no clinical indication for MRI based on x-ray, lab work, and history | Appeal form dated 4/29/2020 not marked as received |
| 26970 | 4/30/2020 | 5/14/2020 | Request to be prescribed double mattress for back pain | Rejected as duplicative of Number 26729 | No |
| 26837 | 5/1/2020 | 5/14/2020 | Request that policy issued by Dr. Wu prohibiting doctors from prescribing double mattresses be rescinded; no box checked for | Rejected because: (1) filed as grievance, not health services review; (2) untimely as to Dr. Wu, who had not worked there | No |

| | | | | | |
|---|---|---|---|---|---|
| | | | "diagnosis/treatment" or "all other health care issues" | for several years; and (3) insufficient evidence that informal resolution was attempted | |
| | 5/1/2020 | 5/14/2020 | Box checked for "all other health care issues"; requests review of policy implemented by Dr. Wu prohibiting doctors from prescribing double mattresses | Rejected as duplicative of Number 26837 | No |
| 29125 | 9/18/2020 | 10/19/2020 | Dental | Returned without disposition; no informal resolution was attempted | No |

Defendants contend that HSR Numbers 26730 and 29125 pertaining to a hepatitis test and dental issue, respectively, are irrelevant to the instant matter; the Court agrees. According to Defendants, this leaves six relevant reviews: 25420, 26729, 26731, 26970, and the two reviews logged as 26837, all of which were returned without disposition, rejected, or denied, and as to which the DOC has no record of any appeals.

Plaintiff contends that he filed seven Level 1 reviews in 2020—two "concerning the denial of medical care and/or failure to facilitate" scheduling of an MRI regarding his abdominal pain (dated February 4 and April 15), and five concerning the denial of a double mattress to alleviate his back pain (dated April 6, April 30, May 1, May 27, and May 29). Pl.'s L.R. 56(a)2 St. ¶ 44. Some of these filings appear to have been sent to custody staff, and are addressed below. In any event, Plaintiff admits he filed only one Level 2 appeal for any of his relevant HSRs. Pl.'s L.R. 56(a)2 St., ¶ 44. This means that Plaintiff automatically failed to exhaust administrative remedies as to all but one of his HSRs.

The only HSR that Plaintiff avers he submitted for appeal is HSR Number 26731, concerning his request for an MRI due to abdominal pain.   Pl.'s L.R. 56(a)2 St., ¶ 44; Pl.'s Decl., ECF No. 68 ¶ 11.   The DOC's records, on the other hand, do not contain evidence that this appeal was received.   Def's. L.R. 56(a)1 St. ¶ 44.   Plaintiff has provided no details in his lengthy declaration as to exactly how he submitted this HSR for review, except to say that he did not get a response to the appeal.   Pl.'s L.R. 56(a)1 St. ¶ 44; Pl.'s Decl. ¶ 11.   As is evident from the grievance records Plaintiff has submitted, he frequently followed up after not receiving responses to grievances he submitted, but he did not appear to have followed up as to this alleged appeal. The appeal form itself does not bear any indication that it was submitted or received by DOC; both sections that are marked "For Official Use Only" are blank.   ECF No. 68 at 44.   The document Plaintiff submitted also does not append the health services decision being appealed, as required. *Id.*   Therefore, although Plaintiff claims he appealed HSR Number 26731, the Court cannot find that there is a genuine issue of material fact as to whether he properly filed this appeal.   For these reasons, this HSR cannot support a finding that he exhausted administrative remedies.

In sum, the Court holds that Plaintiff has not exhausted administrative remedies related to the HSRs concerning his medical care, including his request for an MRI to diagnosis his abdominal pain, his request that medical personnel prescribe him a double mattress, and his request that an alleged policy of not allowing medical personnel to prescribe double mattress be rescinded. Plaintiff therefore cannot pursue, in the instant suit, Eighth Amendment claims related to these issues unless he was somehow excused from exhausting.

D.    Plaintiff Was Not Excused from the Exhaustion Requirement

Having determined that Plaintiff has not exhausted the administrative remedies available to him under A.D. 8.9 related to his medical treatment, the Court considers whether there is a legal basis to excuse Plaintiff from this requirement.   The exhaustion requirement is excused in three circumstances:   when it operates as a simple dead end, when it is so opaque that it becomes incapable of use, or when prison officials thwart the inmate from taking advantage of the process. *Ross*, 578 U.S. at 643–44.

In his response to Defendants' motion, Plaintiff argues that he could not exhaust him claims because he was "[o]bstructed" by prison officials.   Pl.'s Mem., ECF No. 67 at 24.   Plaintiff does not describe exactly how prison officials obstructed his efforts, but, in construing Plaintiff to make the strongest arguments possible, he appears to argue that Defendant Brennan disposed of at least one of his grievances incorrectly, which prohibited him from appealing and fully exhausting his claims before filing suit, and failed to respond to an HSR he appealed.   As described above, however, each of Plaintiff's A.D. 8.9 grievances were rejected for failure to following the Directive's unambiguous procedures.   *See* Defs.' L.R. 56(a)1 St. ¶¶ 44–51.   Defendant Brennan's rejection of Plaintiff's first HSR because it included too many issues did not violate the procedures set forth in A.D. 8.9; rather, § 11 specifically instructs that an inmate "should provide a concise statement of *what particular diagnostic or treatment decision* he/she believes to be wrong and how he/she has been affected."   Defendant Brennan therefore properly rejected the HSR that set forth three separate complaints.   As to the allegedly filed appeal, there is no record that Brennan received this appeal, so she could not act on it.   Further, to the extent any correctional staff members may have failed to respond to Plaintiff's conditions of confinement grievances,

18

those are not relevant to Plaintiff's ability to exhaust his remedies for his claims against the medical staff, which are required to be exhausted through the procedures under A.D. 8.9.   See *Durham*, 2020 WL 4586688, at *6 (noting that grievances against medical officials for medical treatment are subject to A.D. 8.9., whereas grievances related to issues of confinement are subject to A.D. 9.6).

Accordingly, after review of the record, the Court concludes that there are no questions of material fact concerning whether Plaintiff should be excused from exhausting the administrative remedies that were available to him.   Plaintiff therefore cannot continue to pursue claims of inadequate medical care against any Defendant, including Defendants Brennan and Feder.

E.   Plaintiff's Administrative Remedies to Custody Staff

In addition to filing HSRs, Plaintiff also filed grievances with custody staff related to a mattress accommodation.   As these grievances are relevant to whether Plaintiff can maintain his conditions of confinement Eighth Amendment claim related to the denial of a double mattress, the Court analyzes whether Plaintiff fully exhausted his complaints through any available appeals.

Beginning in March of 2020, Plaintiff filed a series of grievances concerning his back pain and requesting a double mattress from custody staff.   ECF No. 68 at 46–72.   On April 6, 2020, Plaintiff filed a Level 1 grievance addressing his request for a double mattress.   *Id.* at 74.   Prison staff responded, on April 27, 2020, that Plaintiff could contact his unit manager to exchange his mattress "as necessary."   *Id.* at 75.   The next day, Plaintiff filed a Level 2 appeal.   *Id.* at 113. Staff disposed of Plaintiff's Level 2 appeal as "[c]ompromised," informing Plaintiff that nothing in his medical records indicated that he would benefit from a double mattress.   *Id.*   Staff also informed Plaintiff that this disposition of his Level 2 appeal exhausted his administrative remedies.

*Id.* Despite staff informing Plaintiff his appeal was fully exhausted, Plaintiff filed a Level 3 appeal on June 12, 2020, which was returned without disposition because Plaintiff could not appeal his Level 2 grievance.  *Id.* at 115.

Thus, Plaintiff has fully exhausted his administrative remedies as it relates to his conditions of confinement deliberate indifference claim for failure to provide him with a double mattress, and the Court will proceed to consider that claim on the merits.

### V.      DELIBERATE INDIFFERENCE

Although Plaintiff has fully exhausted the administrative remedies relating to Defendants' refusal to provide him with a double mattress for his arthritis and back pain, the Court finds that he cannot sustain a claim of deliberate indifference.   The Court therefore grants summary judgment in favor of Defendants.

#### A.   Legal Standard

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishments.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting U.S. Const. amend. VIII).   "Under the Eighth Amendment, States must not deprive prisoners of their 'basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonably safety.'"  *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).   "Although the Constitution does not require 'comfortable' prison conditions, the conditions of confinement may not 'involve the wanton and unnecessary infliction of pain.'"  *Walker*, 717 F.3d at 125 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)).

"Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

"[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"   *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))

The standard of deliberate indifference to inmate health or safety includes both subjective and objective components.   *Farmer*, 511 U.S. at 834.   The objective component requires the prisoner to demonstrate that he had a sufficiently serious "medical need," in other words, a "serious illness or injury resulting in the infliction of unnecessary pain and suffering."   *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).   Injuries demonstrate the requisite seriousness when they lead to "death, degeneration, or extreme pain." *Cole v. Fischer*, 416 F. App'x 111, 113 (2d Cir. 2011) (summary order).   With respect to the subjective component, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety,'" which is "a state of mind 'equivalent to the familiar standard of recklessness' as used in criminal law."   *Smith*, 316 F.3d at 184 (internal citations omitted) (*quoting Chance*, 143 F.3d at 702, and *Phelps*, 308 F.3d at 186).   Conduct may rise to the level of deliberate indifference when the prison official's act or failure to act "evinces 'a conscious disregard of a substantial risk of serious harm.'"   *Hathaway*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Farmer*, 511 U.S. at 839).

The condition of an inmate's mattress may, in certain circumstances, "be so inadequate as to constitute an unconstitutional deprivation."   *Walker*, 717 F.3d at 127.   District courts in this Circuit have found that, in order to state an unconstitutional conditions of confinement claim based on inadequate bedding, a plaintiff must establish:   "(1) he had a medical condition requiring a

21

non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety."  *Rodriguez v. City of New York*, No. 15-CV-07945, 2018 WL 1276826, at *4 (S.D.N.Y. Mar. 9, 2018).

B.  <u>Discussion</u>

Assuming, without deciding, that Plaintiff has demonstrated the objective component of a deliberate indifference claim, Plaintiff has not demonstrated that Defendants subjectively acted with deliberate indifference to his health.

First, with respect to Defendants Martin, Nunez, Carlos, and Peau, there is no genuine issue of material fact concerning whether these Defendants were deliberately indifferent to Plaintiff's mild arthritis and back pain.   As custody officials without medical training, each of these individuals was entitled to rely on the expertise of the DOC's medical staff as to what medical care is appropriate.  *Benitez v. Parmer*, No. 9:12-CV-448 (GTS) (DEP), 2013 WL 5310245, at *6 (N.D.N.Y. July 8, 2013) ("It is well established that supervisory prison officials are entitled to rely on the opinions of medical professionals concerning the proper course of treatment."); *Baltas v. Rivera*, No. 3:19-CV-1043 (MPS), 2020 WL 6199821, at *19 (D. Conn. Oct. 22, 2020) (same). Because none of the medical professionals who examined and treated Plaintiff indicated that a special mattress accommodation was medically necessary, the custody Defendants could not have been deliberately indifferent to Plaintiff's medical needs in not providing one.   For instance, after Defendant Martin instructed Plaintiff in a Level 1 appeal that he could exchange his mattress through his unit manager, *see* ECF No. 61-8 at 9, Defendant Carlos, in responding to Plaintiff's

Level 2 appeal, explained that "[p]er the Medical Report [Plaintiff] attached . . . medical noted the X-ray of [Plaintiff's] back shows . . . arthritis & the best thing for arthritis is Tylenol twice a day." ECF No. 68 at 113.   Defendant Carlos noted that "nothing was noted by medical" indicating that Plaintiff's arthritis was best treated by a double mattress and that Lt. Peau had already placed Plaintiff on the list of inmates to receive a new mattress.   *Id.*   In that vein, it is clear Defendant Peau attempted to resolve Plaintiff's complaint; such conduct does not comport with knowing disregard of "an excessive risk" to Plaintiff's arthritis.   *See* ECF No. 68 at 101 (Defendant Peau stating, "I am working in consultation with onsite medical to remedy this situation.   I have also reached out to the Health Services Program Director for this issue.").   Given this evidence, no reasonable jury could find that any of the custodial Defendants were deliberately indifferent to Plaintiff's health needs.[6]

Additionally, to the extent Plaintiff's fully exhausted grievance under A.D. 9.6 allows Plaintiff to proceed with his claims against Defendants Feder and Brennan, there is likewise no genuine issue of material fact as to whether they were deliberately indifferent to Plaintiff's health. Defendant Brennan, as the Health Services Administrative Remedies Coordinator, had no involvement in Plaintiff's health care or provision of a double mattress.   There is no indication in the record that she was deliberately indifferent to his medical needs when processing the HSRs. Defs.' L.R. 56(a)1 St. ¶ 42.   Although Plaintiff claims that Defendant Brennan improperly processed HSRs—by rejecting one as raising too many issues and failing to respond to the appeal

---

[6] Additionally, Plaintiff's claims against Defendant Nunez cannot survive because he has failed to allege Nunez's personal involvement in the alleged constitutional violation.   *See Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020).   While Plaintiff alleges that he sent a complaint to Defendant Nunez and did not receive a response, failure to respond to a complaint does not demonstrate personal involvement.   *Young v. Choinski*, 15 F. Supp. 3d 172, 189 (D. Conn. 2014).

he claims to have filed, *e.g.*, ECF No. 67 at 24—the Court has concluded that it was not error to return without disposition the grievance raising multiple issues, and that there is no genuine issue of material fact as to whether the appeal was properly submitted by Plaintiff.   Plaintiff's claims therefore cannot proceed as to Defendant Brennan.

With respect to Defendant Feder, the most Plaintiff's evidence shows is a disagreement in treatment, which does not rise to the level of an Eighth Amendment violation absent evidence that the medical provider consciously chose an "easier and less efficacious treatment plan."   *Chance*, 143 F.3d at 703 (internal quotation marks omitted).   Here, Dr. Feder saw Plaintiff once, and determined that pain medication was the best course of treatment for his arthritis, rather than a mattress accommodation.   Defs.' L.R. 56(a)1 St. ¶ 20.   There is no indication in the record that Dr. Feder chose a medication regimen over a new mattress for improper reasons.   Put simply, while it is clear Plaintiff wanted Dr. Feder and his other medical providers to endorse his request for a mattress accommodation, this mere disagreement in treatment does not amount to deliberate indifferent to Plaintiff's medical needs, particularly when the medical records do not evince that a double mattress would have rectified Plaintiff's arthritis pain.   Summary judgment in favor of Dr. Feder is therefore appropriate.

## VI.   CONCLUSION

For the reasons discussed herein, Plaintiff failed to exhaust the available administrative remedies addressing medical issues prior to filing the instant action, and such failure was not excused.   Further, Plaintiff has failed to demonstrate genuine issues of material fact to survive summary judgment on his sole fully-exhausted deliberate indifference claim.

Defendants' motion for summary judgment is therefore GRANTED. The Clerk is instructed to close this case.

**SO ORDERED** at Hartford, Connecticut this 11th day of September, 2023.

  _/s/ Sarala V. Nagala_____
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

25